UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KENEISHA SMITH,

    Plaintiff,

v.                                         Case No.:  5:25-cv-568-SPC-PRL

GETMEHEALTHCARE, LLC,
CHAD SOKOLOFF, MICHAEL
HILF, AND JOHN DOE CALLERS
1–10,

    Defendants.

## **OPINION AND ORDER**

Before the Court is Defendants GetMeHealthCare, LLC, Chad Sokoloff, and Michael Hilf's (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint. (Doc. 9). Pro se Plaintiff Keneisha Smith responded in opposition. (Doc. 10). For the following reasons, the motion is granted.

## **Background**[1]

Plaintiff registered her personal cell phone on the National Do Not Call Registry on September 1, 2024. Nevertheless, she received 31 unwanted telemarketing calls between June 2, 2025, and June 12, 2025. She alleges that

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

on June 12, she answered one call from a third-party telemarketing vendor hired by GetMeHealthCare. The third-party agent asked for her name, phone number, address, date of birth, and whether she had insurance through the Marketplace.[2] Then, the agent transferred Plaintiff to Zach, a GetMeHealthCare employee. He told Plaintiff she would have to sign a DocuSign agreement that he would send via email. He transferred Plaintiff to Britney, another GetMeHealthCare employee, who emailed the agreement, which bore GetMeHealthCare's header. Britney initiated a three-way call with the Marketplace to complete Plaintiff's enrollment. Plaintiff signed the agreement. Neither Zach nor Britney provided Plaintiff with company details.

Later, Plaintiff searched the DocuSign header, which displayed GetMeHealthCare, and called the customer service number. She spoke with Keyonna Grant, a GetMeHealthCare employee, who confirmed Plaintiff's plan in the company's database. Plaintiff alleges that this "sequence revealed that GetMeHealthCare was the company ultimately responsible for the illegal telemarketing calls and enrollment process." (Doc. 1 ¶ 30).

Plaintiff alleges that GetMeHealthCare is vicariously liable for the conduct of John Doe Callers under the federal common law principles of actual authority, apparent authority, and ratification. She alleges that corporate

---

[2] Plaintiff later describes this entity as the federal Health Insurance Marketplace. (Doc. 1 at 12).

2

officers Chad Sokoloff (president) and Michael Hilf (CEO) had direct control and ultimate decision-making authority over GetMeHealthCare's telemarketing practices, and personally authorized the unlawful telemarketing alleged in the complaint.  Further, she alleges that the "evidence establishes an airtight logical bridge directly tying the unlawful calls placed by John Doe Callers to GetMeHealthCare's business operations."  (Doc. 1 at 11).

On September 12, 2025, Plaintiff filed her complaint, alleging violations of: (1) Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), against Defendants (count 1); (2) TCPA, 47 U.S.C. § 227(c), against Defendants (count 2); (3) Florida Telemarketing Act, Fla. Stat. § 501.059(5) against Defendants (count 3); (4) Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against Defendants (count 4); (5) spoofing, 47 U.S.C. § 227(e) and Fla. Stat. § 501.059(8)(a) against Defendants (count 5); and (6) intrusion upon seclusion against Defendants (count 6).  She requests statutory damages under the TCPA, various Florida statutes, and FDUTPA; attorney's fees under FDUTPA; a permanent injunction prohibiting Defendants from making calls to any consumer without prior express written consent, requiring Defendants to implement and maintain a written internal do-not-call policy, and requiring Defendants to train all employees and third-party vendors on TCPA and Florida telemarketing compliance; declaratory judgment that Defendants' use

3

of spoofing, robocalls, and deceptive misrepresentations violate federal and Florida law; and pre- and post-judgment interest.

## Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Rule 12(b)(6) is read alongside Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69 (11th Cir. 1997). The rule is not designed to strike inartistic pleadings or provide a more definite statement to answer an apparent ambiguity, and the analysis of a Rule 12(b)(6) motion is limited

primarily to the face of the complaint and its attachments. *Id.* (citing 5 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1356 at 590–92 (1969) (Wright & Miller)).

Pro se complaints are construed liberally and held to less stringent standards than formal pleadings that lawyers draft. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But this leniency has its limits. Courts neither "serve as de facto counsel for a [pro se] party," nor "rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168–69 (citation omitted).

## Analysis

To state a claim under the TCPA, a plaintiff must allege that he has "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C.A. § 227(c)(5). Here, Defendants identify a fatal flaw in Plaintiff's TCPA allegations: despite a 28-page complaint, she only alleges that Defendants placed *one* call—the June 12 call. Otherwise, she makes merely conclusory allegations about the "logical bridge" to connect Defendants to the other 30 calls. (Doc. 1 at 11). She identifies 31 different originating Caller ID numbers, but she does not state facts connecting any of these calls to Defendants other than the June 12 call.

In her response, Plaintiff argues that at this stage of the litigation, she need only plausibly allege the calls were made "by or on behalf of" Defendants. (Doc. 10 at 4). But even if this were true, she has not plausibly alleged any facts to show Defendants (or their third-party telemarketing vendor) made any of the other calls. As Defendants emphasize, Plaintiff only alleges, through an exhibit, that the calls are from "healthcare marketplace." (Doc. 9 at 8). She fails to allege facts regarding the caller(s)' identities, the content of the calls, offers presented, or any other facts beyond speculation. (*Id.* at 8–9). In short, no facts in the complaint connect Defendants to the other 30 calls. Because a single call is not actionable under the TCPA, her conclusory allegations are insufficient to state a claim. *Cf. Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019) (plaintiff alleging that he was wrongfully called some eighteen times by Telecel on behalf of DIRECTV alleged TCPA claim). Her claims for monetary relief under the TCPA are dismissed.

Additionally, Plaintiff lacks standing to seek injunctive relief under the TCPA. To demonstrate Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "And because injunctions regulate future conduct, a party has standing to seek injunctive relief only if his injury in fact

is a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023) (internal quotation marks and citation omitted).

In her complaint, Plaintiff alleges no facts to suggest that she may suffer a continuing or future injury. All she alleges is that she received 31 calls, the last one occurring in June 2025—at least six months ago. Accordingly, there is no alleged likelihood of future harm that the Court can remedy via a permanent injunction. *See id.* (named plaintiffs lacked Article III standing to pursue injunctive relief because complaint alleged only past harm as a result of defendant's misrepresentations). Her request for injunctive relief is dismissed.

Having dismissed Plaintiff's federal claims, a jurisdictional issue arises.[3] The TCPA, a federal statute, was the only legal basis pled that supported this Court's jurisdiction. Now that the TCPA-based claims are gone, Plaintiff has not established the Court's jurisdiction over the remaining state-law claims.[4] The rest of Plaintiff's claims hinge on diversity jurisdiction. She has not

---

[3] Federal courts are courts of limited jurisdiction and have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y.H. Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

[4] The Court otherwise declines to exercise supplemental jurisdiction over the state-law claims. *See Raney v. Allstate Ins.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

sufficiently alleged the citizenship of the parties for the Court to determine whether diversity jurisdiction exists. She alleges residency, not domicile, of the individual parties. (Doc. 1 at 3–4). *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction.") (citation omitted). And she does not properly allege the limited liability company's citizenship. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004) (a limited liability company is a citizen of every state in which one of its members is domiciled).

The complaint has other issues as well. Defendants raised a myriad of other accurate arguments concerning pleading deficiencies. While the Court does not analyze each in detail, Plaintiff is on notice of these deficiencies should she file an amended pleading. For example, Defendants correctly characterize the complaint as a shotgun pleading. (Doc. 9 at 6). The complaint lumps "Defendants" together in each count and fails to put the individual defendants on notice of their alleged wrongdoing. (*Id.* at 7). *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) ("the final type of shotgun pleading is a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against") (cleaned up).

Further, Plaintiff fails to plead facts establishing that Chad Sokoloff or Michael Hilf are individually liable. (*Id.* at 12). Instead, she merely pleads conclusory allegations of direct control over telemarketing practices, knowing approval of the use of third-party callers, and failure to implement compliance safeguards, among others. (Doc. 1 at 7–11). On these factually thin allegations, Defendants argue the Court should dismiss the case with prejudice, as amendment would be futile. (Doc. 9 at 13). In truth, it is a close call. But given Plaintiff's pro se status, the Court will give her a chance to amend.[5]

Accordingly, it is now

**ORDERED:**

1. Defendants GetMeHealthCare, LLC, Chad Sokoloff, and Michael Hilf's Motion to Dismiss Plaintiff's Complaint (Doc. 9) is **GRANTED**.

2. The complaint (Doc. 1) is **DISMISSED without prejudice**.

---

[5] A couple of housekeeping matters. First, most of the cases Plaintiff cites are not from the Eleventh Circuit and are not binding on this Court. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him[ ] . . . . A circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts."). Additionally, many of Plaintiff's citations do not comply with proper formatting requirements. Plaintiff is directed to review and comply with the formatting guidelines in *The Bluebook, A Uniform System of Citation* (Columbia Law Review Ass'n *et al.* eds, 22nd ed. 2025). Among other things, she must provide citations to the page numbers containing the information cited in cases. *Cf. Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (pro se litigants are "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure").

3. Plaintiff may file an amended complaint by **January 16, 2026**. **Failure to do so may result in dismissal of this action without further notice.**

**DONE** and **ORDERED** in Fort Myers, Florida on December 31, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

10